**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR-06-74T** |
| | : | |
| | : | |
| **JOSE GORIS** | : | |

**GOVERNMENT'S OBJECTION TO REPORT AND RECOMENDATION AND REQUEST FOR SENTENCE ABOVE THE GUIDELINE RANGE**

In a Report and Recommendation issued on November 21, 2001, United States Magistrate Judge Lincoln D. Almond recommended to this Court that, as a result of the defendant admission to violating the terms and conditions of his supervised release, the defendant's "term of supervised release be extended for an additional eighteen months and be modified to provide that the first six months of such extended term include the condition of home confinement with electronic monitoring." Report and Recommendation, p. 1. The government respectfully disagrees with the Report and Recommendation, and asks this Court to impose an above Guidelines sentence of twelve months imprisonment, to be followed by twenty-four months of supervised release.[1] The basis for the government's objection and sentencing recommendation is set forth below.

[1] The Guideline Range, which is not in dispute, is five to eleven months imprisonment. Report and Recommendation, p. 6.

**ARGUMENT**

The defendant is presently on a three year term of supervised release arising from a felony conviction in 2004 in the United States District Court for the Western District of Texas for conspiracy to distribute 100 kilograms of marijuana. The defendant was also sentenced in that case to a term of imprisonment of twelve months and one day. There is no dispute that on December 30, 2005, the defendant committed two state crimes in violation of the terms of his supervised release by providing false information to 911 and by falsely reporting a crime. Defendant pled guilty to those misdemeanor crimes before Rhode Island District Court Judge Michael Higgins on March 6, 2006. It is these crimes which provide the basis for the violation of supervised release before this Court. The defendant admitted the violation at a hearing before Magistrate Judge Almond on October 17, 2007.

Accordingly, the only question before this Court is the appropriate sentence to be imposed. Pursuant to 18 U.S.C. § 3583(e), the factors which govern that inquiry are set forth at 18 U.S.C. § 3553(a). Among those factors are the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). The Report and Recommendation emphasizes that the state crimes giving rise to the violation were misdemeanors. In the government's view, however, merely characterizing the

defendant's offenses as misdemeanors understates the seriousness of his conduct. According to the police report accepted in evidence by Magistrate Judge Almond as Defendant's Exhibit B, as a result of the defendant's admittedly false call to 911 in which he claimed that his ex-girlfriend was shooting at him, two women were stopped by police, and then "ordered out of the vehicle and onto the ground." Both women were then handcuffed. They were then patted down for weapons. Had the defendant not falsely claimed that the persons who were chasing him had shot at him, plainly, the troopers would not have put these two women through what must have been a frightening and humiliating experience. Indeed, the defendant's false injection of weapons into the mix could well have led to someone being seriously hurt during the takedown of the women. In the government's view, the results of the defendant's false claim of having been shot at by these women had extremely serious consequences. Those consequences warrant a sentence of imprisonment, and indeed a sentence of imprisonment beyond the guideline range.

The Report and Recommendation states that "[g]iven the totality of the circumstances surrounding the state misdemeanor convictions, it almost appears that the government could be using this case to punish the defendant for uncharged conduct." Report and Recommendation, p. 8. The government disagrees. There is no hidden motive here. The very purpose of the

violation, and the sole aim of the government, is to punish the defendant for charged conduct -- his flouting of the terms of his supervised release by making false claims in a 911 call that had serious consequences for two innocent people.[2] The Report and Recommendation notes, in footnote 3 on page 8, that the government's recommendation of twelve months imprisonment "is essentially the same sentence as Defendant's original federal sentence of twelve months and one day for the offense of conspiracy to distribute marijuana." True, but again, context is critical. The defendant appears to have received a substantial break on that original sentence, given that the charge carries a mandatory minimum sentence of five years imprisonment pursuant to 21 U.S.C. § 841(b)(1)(D).

In the Report and Recommendation, Magistrate Judge Almond asserts that he is not convinced that the Defendant "intentionally made a false 911 call." Report and Recommendation, p. 7. Yet that is the charge that the defendant pled guilty to, and neither the charge nor one of its elements, i.e., intent, can be collaterally attacked here. The Report and Recommendation attempts to explain away the defendant's guilty

[2] To the extent that the defendant claims that he is the "victim", and indeed, that was the tenor of the violation hearing, both during the presentation of evidence and during the defendant's subsequent statement to the court, it is worth noting that the two women who purportedly "victimized" him were never charged with a crime.

plea by asserting that the defendant "likely plead nolo [to the state charges] because those charges were misdemeanors, he was offered a suspended sentence and probation, and he did not have the benefit of counsel." Report and Recommendation, p. 8. The government's threshold response to this is that it is mere speculation. The government would further note that the sentence the defendant so blithely accepted (if this version of events is to be accepted) was a conviction in state court; in other words, he apparently was not offered, nor did he demand, the lesser, non-conviction sentences of a filing or straight probation. Furthermore, there is no support for a claim that the defendant pleaded guilty because he did not have the benefit of counsel. Procedure in state district court requires that a defendant be advised of his right to counsel, and his right to have counsel appointed if he cannot afford one. Judge Higgins has been on the bench for nearly thirty years, and is no stranger to that procedure. Furthermore, given defendant's lengthy criminal history, much of which consists of state district court matters, it is too much to say that not "hav[ing] the benefit of counsel" caused him to plead guilty to the state misdemeanor charges. The more likely answer, and indeed the only answer to which this Court should give credence, is that the defendant pleaded guilty to the state charges because he was guilty of them.

Another § 3553(a) sentencing factor which supports the government's sentencing recommendation is the history and characteristics of the defendant. Since 1994, when he was twenty years old, the defendant has had at least fourteen contacts with the criminal justice system. Among those contacts are a 1995 felony charge of possession of a controlled substance, for which he was placed on probation for eighteen months, a 1997 conviction for resisting arrest, for which he was sentenced to a six-month suspended sentence, a 1999 charge of assault and resisting arrest, for which he was placed on probation for one year, and a 2003 felony conviction for carrying a pistol without a license, for which he was sentenced to a two-year suspended sentence. The defendant's other state contacts which led to sentences similarly resulted in sentences of less than jail. Indeed, the only case in which the defendant appears to have been sentenced to any jail time whatsoever is the 100 kilogram marijuana case which is presently before this Court. The point, of course, is that probation and suspended sentences and even short periods of incarceration have not sent what should be a clear and obvious message to this defendant: stay out of trouble. In the context of this case, that means, if you have to call 911, by all means, do so. But it should also mean that, when you fabricate facts, and those fabricated facts have serious consequences for other people, you are not

simply returned to the street and given the opportunity to sin again. The government submits that its recommendation of twelve months imprisonment, followed by twenty-four months of supervised release, is reasonable, and should be imposed.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Peter F. Neronha
PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza - 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov

Dated: November 21, 2007

Certificate of Service

I hereby certify that on the 21st day of November, 2007, I caused a copy of the within "Government's Objection To Report And Recommendation And Request For Sentence Above the Guideline Range" to be served by way of the Electronic Case Filing system upon John M. Cicilline, Esq., counsel for the defendant.

/s/ Peter F. Neronha
PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office

50 Kennedy Plaza - 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov